COURT OF APPEALS OF VIRGINIA


Present:    Judges McClanahan, Haley and Senior Judge Willis


BRENDA DODSON

                                                            MEMORANDUM OPINION*
v.        Record No. 1900-09-4                                        PER CURIAM
                                                            MARCH 9, 2010
FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Marcus D. Williams, Judge

              (Kimberly J. Phillips; Patrick Henry, LLP, on brief), for appellant.

              (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
              County Attorney; Deborah C. Laird, Assistant County Attorney;
              Shirley A. Norman-Taylor, Guardian *ad litem* for the minor children,
              on brief), for appellee.


       Brenda Dodson (mother) appeals the circuit court's ruling to terminate her parental rights to

her seven children.  Mother contends the trial court erred by finding that (1) she had not

substantially remedied the situation that placed her children in foster care and (2) the Fairfax County

Department of Family Services (the Department) provided reasonable and appropriate services in

order to assist mother in remedying the situation that placed her children in foster care.  Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Mother was involved in a relationship with Brian Aucoin, and they had seven children together. They traveled with a carnival for approximately five years until July 2000, when they stopped traveling and worked local carnivals. The family lived in several shelters and motels.

The Department first became involved with the family in 2002 due to a complaint of lack of supervision for four of the children. In 2004, the Department received another complaint of lack of supervision for six of the children.

In the spring of 2005, the Department received another referral on the family. Mother was pregnant with her seventh child. Mother and Aucoin took the six children to the Woodrow Wilson Bridge, while Aucoin panhandled. The Department placed the family in a motel, arranged for food stamps and other benefits, and enrolled the school-age children in school.

From August 3, 2005 until October 13, 2005, the family was voluntarily placed in a shelter. Aucoin was asked to leave the shelter because of his continued intoxication and refusal to get mental health treatment.[1] The Department asked mother to stay in the shelter with the children. Mother refused, and the family moved to Bishop, Virginia to live with Aucoin's brother.

The family later moved to North Carolina to live with the maternal grandmother. The North Carolina Child Protection Services (NCCPS) became involved with the family because the family's trailer had no electricity, heat, or running water. The children were not being

---

[1] Aucoin was bipolar and did not take his medication.

supervised and not attending school. Aucoin continued to drink. When the NCCPS told mother that they were going to remove the children, the family moved.

In November 2006, the family returned to Fairfax County. The Department became involved again in December 2006. The family was living in a room above the kennel where mother worked. Their home was unsuitable, the children were dirty, and one of the children had lice. Three of the children should have been enrolled in school, but were not.[2] In March 2007, mother was fired from her job because she stole blankets, sheets, and food from the kennel. The Department placed the family in a hotel. Mother moved her sister, her sister's baby, and her sister's boyfriend into the hotel room. There were four adults, eight children, and several dogs in the hotel room. In mid-May 2007, the hotel evicted the family because of an altercation with another tenant. The Department arranged to move the family to another hotel. The Department reviewed other housing options with mother, but mother had to be working and Aucoin had to be sober, which did not happen.

On May 30, 2007, the Department removed the children from mother and Aucoin. The hotel asked mother and her family to leave because Aucoin had been drinking, unknown people were in the family's hotel rooms, and mother had dogs in the rooms without the manager's permission. The Department again reviewed housing options, including shelters, with mother, but she refused shelter services. Since mother had no housing for the children, the Department removed the children from her care.

On June 1, 2007, the Fairfax County Juvenile and Domestic Relations District Court (the JDR court) issued emergency removal orders, and on June 5, 2007, the JDR court entered preliminary removal orders and continued custody of the children with the Department. Mother

---

[2] The Department enrolled the three children in school and had them evaluated. The children had significant academic delays. The Department suggested day care for the younger four children, but mother refused.

was ordered to complete and follow the recommendations from a psychological evaluation, an Alcohol and Drug Services (ADS) evaluation, a parent-child assessment, and a parenting class. On June 27, 2007, the JDR court found that all seven children were neglected.

Mother repeatedly denied that there were any problems, although she admitted that she did not have stable housing. She regularly visited with the children. Mother completed the ADS evaluation, and no recommendations were made.

On August 8, 2007, the JDR court entered dispositional orders continuing legal custody of the children with the Department and ordered mother to participate in evaluations and services. In August 2007, mother obtained employment at Petco. Since she was employed, she was eligible for certain housing programs. Mother did not comply with the Department's request to provide several pay stubs and a summary of her expenses.[3] Consequently, her housing applications were denied.

In September and October 2007, mother underwent a psychological evaluation and parent-child evaluation. Dr. Carolyn Murphy conducted the evaluations and found that the prognosis for family reunification was poor. Dr. Murphy found that mother lacked basic parenting skills for nurturing, guidance, and discipline. Mother lacked the resources to deal with everyday living, exhibited no impulse control, and became easily distressed and frustrated. Dr. Murphy recommended parenting classes. Mother refused to take the first available parenting class because Aucoin could not participate with her due to his continued drinking. Dr. Murphy did not recommend counseling because mother refused to accept responsibility for her children being in foster care and, as a result, could not productively engage in counseling. Mother denied that they had any significant problems and did not believe that she needed any services.

---

[3] Mother provided only two pay stubs.

Despite Dr. Murphy's recommendations regarding counseling, the Department offered counseling services to mother in January 2008. Mother refused, saying that she did not need counseling.

The Department also tried to help mother with housing through their grant program, but mother's suggestions for housing were hotels, motels, or apartments that were too expensive. Therefore, she was unable to benefit from the grant program.

On February 6, 2008, the JDR court approved foster care plans with the goal of returning the children home. In February 2008, mother reported that she was living in a home leased by her new employer, the Assisi Pet Rescue Foundation. The Department visited the home in April 2008, and discovered that mother's aunt and her children were living in the home too. There were several dogs in the home. The house was dirty and smelled. The floors were covered with dog hair, mud, and dog feces.

In April 2008, mother started parenting classes; however, she failed the program because she attended only five out of twenty classes due to her incarceration.

In June 2008, dead animal bodies were exhumed from the grounds of the home where mother was living, and mother was charged with and later convicted of twenty-seven counts of animal cruelty. She was incarcerated until June 2009. While incarcerated, mother kept in contact with the Department through weekly collect calls. She failed to give the Department any verifiable information regarding classes and programs she participated in while in the jail.

On July 21, 2008, the JDR court continued the hearing to allow the Department to file petitions for termination of parental rights and to file foster care plans with the goal of adoption. After a hearing on April 23 and 24, 2009, the JDR court terminated mother's and Aucoin's parental rights and approved the foster care plans with the goal of adoption for all seven children. Mother appealed to the circuit court.

After a three-day trial that began on July 20, 2009, the trial court terminated mother's and Aucoin's parental rights and approved the foster care plans with the goal of adoption. The trial court entered its orders on August 10, 2009, and mother timely appealed.[4]

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The trial court terminated mother's parental rights based on Code § 16.1-283(C)(2).[5] Mother argues that she substantially remedied the situation that led to her children being placed in foster care. She explains that she submitted to the ADS evaluation and there were no treatment recommendations. She submitted to the psychological evaluation and parent-child assessment. Dr. Murphy recommended parenting classes; mother contends she attended most of them before she went to jail. She alleges that she attended a parenting class in jail; however, she did not provide documentation to the Department. Mother further argues that she complied with the Department's

---

[4] Aucoin also appealed the trial court's decision. See Aucoin v. Fairfax County Dep't of Family Servs., Record No. 2652-09-4.

[5] Code § 16.1-283(C)(2) states that a person's parental rights may be terminated if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

other requirements regarding visitation and providing names of relatives. Mother argues that she was "well over 70% compliant with the foster care plan."

The trial court found that mother's attempts with compliance were not sufficient. Her own preferences, i.e. not entering a shelter without Aucoin despite the fact that it could lead to more stable housing, "took precedence" over the best interests of the children. The trial court noted that although mother tried to obtain independence and stability, it "ended in disaster which landed her in jail for almost a year" due to twenty-seven counts of animal cruelty. Furthermore, the trial court noted that mother acted inappropriately during visitation and was unable to control the children. She was "incapable" of taking care of her seven children, who have special needs. The trial court concluded, "While the mother was able to checklist some of the conditions required by the Court, it was not enough for substantial compliance."

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Mother was unable to remedy the problems that led the children to foster care. She could not maintain adequate and stable housing. Her living situations were unsuitable for the children. She could not maintain employment. She made poor decisions, which ultimately resulted in receiving a jail sentence. She was unable to assess and care for the children's needs. All of the children were in counseling with various issues, ranging from ADHD and learning disabilities to inappropriate sexual behaviors.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

At the time of the hearing in the trial court, the children had been in foster care for approximately two years. During that time, mother was unable to remedy her situation and, at times, it actually worsened.

The evidence was sufficient to prove that mother failed to remedy the situation that led the children to foster care.

Mother also argues that the Department did not provide reasonable and appropriate services for her particular situation. The trial court found that "the financial instability, housing instability and inability to properly parent remain and have not been addressed" by mother and Aucoin. Mother contends the Department failed to provide services to meet these needs, matched with her skill level and abilities. For example, mother argues that the Department should have helped her with job training or assistance in finding employment. The Department should have assisted her with obtaining Section 8 housing or other appropriate housing and setting up a bank account for her to save money. Mother explains that since she functioned on a low level and was unable to multi-task, the Department should have provided her with more personal guidance in finding appropriate housing. Furthermore, the Department should have known that mother was incapable of handling all seven children at one time during a visitation, and should have divided the visitations among the children.[6] Mother also argues that the

---

[6] In early 2008, the Department divided the visits so that the three oldest children visited at one time and the youngest four children visited at another time.

Department should have provided her with more basic parenting education and limited the visitations to just one child per visit.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

The Department provided reasonable and appropriate services for this family. Repeatedly, the Department assisted with housing by placing the family in hotels and shelters. The Department explained the housing options to mother and that mother could qualify for better housing if she left Aucoin. Aucoin's alcoholism and other problems forced the family to leave shelters and hotels. Mother refused to leave Aucoin, even if doing so would have benefited the children.

The Department enrolled the children in school and provided assistance with food and transportation. Despite mother working and receiving these services, she was unable to save money or explain to the Department how she spent her money.

The Department provided mother with an ADS evaluation, a psychological evaluation, a parent-child assessment, and parenting classes. Mother refused to participate in the first available parenting class because Aucoin could not participate due to his alcoholism. Mother took no responsibility for her children being in foster care. She refused to acknowledge that her inability to provide stable housing and continuing to live with an alcoholic affected the children's well-being. Even though Dr. Murphy did not think that counseling would be productive, the Department still offered counseling services to mother after she threatened to bomb the Department's building. Mother refused counseling, stating that she did not need it.

"The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

The Department offered numerous services to mother over the years that it was involved with her family, and the trial court did not err in concluding that the Department offered reasonable and appropriate services.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.